IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RANDY T. SHULTZ, # 324-839        *

    Petitioner                        *

       v                            *      Civil Action No. DKC-11-3652

PHILIP MORGAN, Warden, et al.[1]    *

    Respondents             *
                                    ***

**MEMORANDUM OPINION**

Pending is Randy T. Shultz's ("Shultz") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Respondents, by their counsel, have filed a response with exhibits (Resp. ECF No. 13), to which Shultz, who is self-represented, has replied. (Reply, ECF No. 16). After considering the pleadings, exhibits, and applicable law, the court determines a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2011); Rule 8, "Rules Governing Section 2254 Proceedings in the United States District Courts"; *see also Fisher v.. Lee,* 215 F.3d 438, 455 (4th Cir. 2000) (stating there is no entitlement to a hearing under 28 U.S.C. § 2254(e)(2)).

**BACKGROUND**

Shultz is challenging his convictions in 2004 for armed robbery, attempted theft, and two handgun offenses after a jury trial in the Circuit Court for Prince George's County. (Resp. ECF No. 13, Ex. 4 at 5-9). On December 9, 2004, the Circuit Court sentenced him to serve 55 years of incarceration. (Ex. 5 at 11-12).[2] The facts adduced at trial were summarized by the Court of Special Appeals of Maryland as follows:

---

[1] Philip Morgan was Warden of Western Correctional Institution where Schultz was incarcerated at the time the Petition was filed. Richard J. Graham, Jr. is presently Warden of the Western Correctional Institution.

[2] All exhibits cited were filed by Respondents unless otherwise specified.

The State presented evidence that, in August 2001, appellant robbed four teenagers in Suitland, Maryland. Three of the four victims testified for the State: Robin Yates, her cousin Nikkia Lewis, and their friend Alexander McLeod. Appellant's defense was misidentification.[1] The evidence, viewed in the light most favorable to the State, established the following events.

At 3:00 in the morning in question, Yates and Lewis were standing behind a blue Honda outside of their apartment complex talking to McLeod and Fred Cooper, another friend. Yates noticed a man, later identified as appellant, park a yellow Volvo near them, get out of the car, and walk around a building. The next thing she knew, Yates looked up and saw appellant pointing a black handgun at her and McLeod with a bandanna wrapped around his hand. Yates was about six feet away from appellant; McLeod was about one foot away from appellant, standing between appellant and Yates.

Appellant told Lewis and Cooper to walk toward the back of the car where Yates and McLeod were standing. All victims put their hands in the air, either by instruction or automatically. Appellant quickly told them to put their hands down because it looked like they were signaling the police; they complied. Appellant instructed them to give him their money. Lewis and Cooper handed him some money; Yates and McLeod did not. Lewis gave him a ten-dollar bill, a five-dollar bill, and three one-dollar bills.

Appellant then asked Cooper for his watch. When Cooper protested, appellant hit Cooper on the head with the gun. At that time, Yates, Lewis, and Cooper ran, leaving McLeod behind. Yates and Lewis ran to their apartment where Lewis's mother called the police. A police officer arrived a few minutes later.

When the other three teenagers fled, McLeod backed away from appellant, who had his gun pointed at McLeod. McLeod eventually turned, walked about forty feet away, and hid behind a car. From that position, McLeod watched appellant get into and out of the blue Honda and then walk toward an apartment building. He then observed appellant return to the car and sit inside. A police car, apparently driven by Sergeant Dave Hayes, subsequently passed appellant, after which appellant got out of the car and ran.

By then, Cooper had rejoined McLeod. The two teenagers saw another police car coming toward them. Corporal Michael Ober of the Prince George's County Police Department was driving that car. He stopped and told the two teenagers to get inside. They told the corporal what had happened and that another police car had just driven past appellant. The corporal notified Sergeant Hayes over the radio that he had just driven past the robber.

Sergeant Hayes turned his car around and drove back in the direction from which he came. As the sergeant approached appellant, appellant started walking

and then running away from him. The sergeant saw appellant run into and out of the apartment building on Silver Park Drive. Meanwhile, Corporal Ober had returned to where McLeod and Cooper had spotted appellant, and he directed them to point out appellant if they saw him. McLeod spotted appellant and told the officer, "That's him."

Once McLeod and Cooper positively identified appellant as the robber, he was arrested. From appellant's front pocket the police recovered two ten-dollar bills, three five-dollar bills, and four one-dollar bills. The police also recovered a neatly folded $100.00 bill inside appellant's cell phone case.

The blue Honda was processed for fingerprints, and although two fingerprints were recovered, neither matched appellant's. The police discovered that the car was stolen. A K-9 unit, which was brought to the area, discovered a gray bandanna wrapped around a black handgun next to the same apartment building that Sergeant Hayes had seen appellant run into and out of. The gun was loaded with a bullet in the chamber.

The four teenagers were taken to a police station where they each gave written statements and described the robber.[2] Yates, Lewis, and McLeod identified appellant in court as the robber. They described the robber and the gun in a similar fashion, and they testified that they had no doubt in their mind that appellant was the robber. The three teenagers also identified a picture of the gun and the bandanna as that used in the robbery.

_____

[1] Appellant testified that he did not commit the robberies and that he was present in the vicinity to purchase marijuana. Appellant's girlfriend corroborated appellant's explanation on the stand for why he was present near the crime scene. Appellant's cell-mate, Derrick Waddy, testified that he, not appellant, committed the robberies. Waddy admitted that he was incarcerated pending trial for two armed robberies and that he had been convicted in 2002 for robbery and had a probation violation pending for which he risked serving twenty years.

[2] Each victim was placed in a different room at the police station and, while there, each provided a written statement. Yates wrote that the robber was a light-skinned black male, 5'7 or 5'8, 175 pounds, "wearing a black cap, light blue jeans, gray "Old Navy" T-shirt, and white tennis shoes. Lewis wrote that the robber was a light-skinned black male, 5'8-5''10 tall, weighing 145 pounds, wearing a black hat, gray Old Navy t-shirt, blue jeans, white shoes, and having a short haircut, a "low cut beard," and a moustache. McLeod wrote that the robber was a light-skinned black male with a short haircut, beard, and moustache wearing a gray shirt with "[s]ome type of symbol" on it, blue jeans and white shoes, and he was 5'9" and weighed about 155 pounds.

Ex. 8 at 1-4.

**PROCEDURAL HISTORY**

Shultz, by his counsel, appealed his conviction to the Court of Special Appeals of Maryland, presenting three questions for review: 1) Did the trial court err in failing to explain the concept of reasonable doubt in its instructions to the jury; 2) Did the court err in failing to provide an identification instruction; and 3) Did the trial court err in considering, for purposes of sentencing, evidence of prior charges not resulting in convictions. (Ex. 6 at 2; *see also* Ex. 7-8).

Shultz's convictions were affirmed by unreported opinion filed on August 7, 2006. (Ex. 8). Shultz filed a Petition for a Writ of Certiorari in the Court of Appeals of Maryland in which he raised a single question: "Does the failure to explain the concept of reasonable doubt to a jury constitute error which should be reviewed even in the absence of an objection at trial?" (Ex. 9.) The Court of Appeals denied review on November 13, 2006. (Ex. 10).

On March 2, 2007, Shultz filed a Petition for Post-Conviction Relief in the Circuit Court for Prince George's County. On March 12, 2009, the court held a hearing on the Petition. (Ex. 14). The post-conviction court outlined Shultz's claims as: A) ineffective assistance of trial counsel for: 1) failing to obtain complete discovery or bring out at trial that he wanted to provide a statement to the police, 2) failing to object to the State nol prossing counts, 3) failing to ensure that bench conferences were confidential, 4) failing to object to the testimony of Fred Cooper, 5) failing to object to the reasonable doubt instruction, 6) failing to request an instruction on eyewitness identification, 7) failing to object to the sentencing court's consideration of prior bad acts, 8) failing to request a voir dire question regarding handgun crimes, 9) failing to utilize peremptory challenges competently, 10) failing to advise him of his right to remain silent, 11) failing to object to the instruction on direct and circumstantial evidence, 12) failing to object to impeachment evidence, 13) failing to request a missing witness instruction, 14) failing to renew a

motion for acquittal at the close of the case, and 15) the cumulative effects of these errors; B) ineffective assistance of appellate counsel for failing to raise on appeal claims: 1) that the police refused to take his statement, 2) that the State improperly nol prossed counts, 3) that the court failed to sequester witnesses, 4) challenging the denial of the judgment of acquittal, 5) that he was not advised of his right to remain silent; 6) challenging the courts instructions on direct and circumstantial and consideration of prior bad acts, and 7) challenging the court's failure to instruct eyewitness identification and missing witnesses; C) trial court error for 1) issuing a defective reasonable doubt instruction, 2) denying him his right of confrontation, 3) failing to sequester witnesses, 4) denying his motion for judgment of acquittal with respect to victim Fred Cooper, 5) failing to advise on direct and circumstantial evidence, 6) failing to issue a missing witness instruction, 7) mishandling his impeachment by way of prior convictions, 8) failing to advise him of his right to remain silent, and 9) improperly instructing the jury on its consideration of his prior convictions. (Ex. 14 at 11-25; *see also* Ex. 11-13 & 15). The two issues argued by Shultz's post-conviction counsel at the hearing were whether trial counsel rendered ineffective assistance by failing to object to the reasonable doubt instruction and by failing to request an eyewitness identification instruction. (Ex.14 at 29-36). By opinion and order filed on January 4, 2010, the circuit court denied all allegations presented at the hearing. (Ex. 15).

Shultz sought leave to appeal the post-conviction court's decision by alleging trial counsel was ineffective for failing to 1) object to the incomplete reasonable doubt instruction, 2) request an instruction on eyewitness identification, and 3) object to sentencing court's consideration of prior bad acts. (Exhibit 16). The Court of Special Appeals of Maryland summarily denied leave to appeal by unreported opinion filed on July 6, 2011. (Ex. 17).

**PETITIONER'S CLAIMS**

Shultz presents the following claims in this Petition: A) the trial court erred 1) by failing to explain reasonable doubt to the jury, 2) by failing to issue an identification instruction, and 3) by considering prior charges not resulting in a conviction in imposing its sentence; and B) trial counsel was ineffective for 1) failing to object to the trial court's reasonable doubt instruction, and 2) failing to object to the absence of an identification instruction. (Petition, ECF No. 1 at 5-7).[3]

**PROCEDURAL DEFAULT**

As a threshold matter, this Petition is reviewed subject to the doctrine of procedural default which ensures "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276; *see also* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of remedies available in state court). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v.* Carrier, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46–47 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). When a

---

[3] Schultz also requests DNA testing of the handgun and bandana. (Petition, ECF No. 1 at 6, ¶ D) To the extent he is requesting discovery, the request shall be denied as good cause has not been demonstrated. Habeas petitioners are not entitled to discovery as a matter of ordinary course. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the "Rules Governing Section 2254 Cases in the United District Courts" provides that discovery may be permitted in a habeas proceeding upon a showing of "good cause." If this request were considered a claim for habeas relief, it has not been raised before the state courts and is dismissible for lack of exhaustion as is required under 28 U.S.C. § 2254(b)-(c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 846 (1999) (explaining the purpose of exhaustion is to give "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts").

claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show: 1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or 2) that failure to consider the claim on the merits would result in a miscarriage of justice, i.e., the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995); *Murray*, 477 U.S. at 495–96; *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (internal quotation marks omitted). Shultz sets forth no allegations of fact to excuse procedural default by showing cause and prejudice. Although he asserts that he is actually innocent, he points only to the trial testimony of Mr. Waddy and his request for DNA testing. Neither is sufficient to demonstrate actual innocence. (Pet. Reply ECF No. 16).

## STANDARD OF REVIEW

Shultz's claims will be analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254 which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, __U.S. __, __, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* __ U.S.__, 134 S. Ct 1697, 1699 (2004), quoting *Harrington v. Richter*, __U.S. __, __, 131 S. Ct. 770, 786-87 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court: 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id*. Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (internal quotation marks and citation omitted).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the

state court decision was based on an unreasonable determination of the facts. *Id*. (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379 (quoting 28 U.S.C. § 2254(e)(1)). Shultz's claims will be analyzed under these standards.

## DISCUSSION

### I. CLAIMS OF TRIAL COURT ERROR

#### A. REASONABLE DOUBT INSTRUCTION

Shultz's first claim is that the trial court failed to "explain the concept of 'reasonable doubt' in its instructions to the jury" because the instructions did not include the third paragraph of the Maryland Pattern Jury Instructions. (Petition, ECF No. 1, at 5; *see also* Trial Trans. ECF No. 3 at 155-56).[4] This claim does not allege a violation of federal law or a constitutional right;

---

[4] The trial court's reasonable doubt instruction was virtually identical to the first and second paragraphs of the Maryland Criminal Pattern Jury Instructions, MPJI-CR 2:02, at 18 (1995) and was presented to the jury as follows:

> The Defendant is presumed to be innocent of the charges, and this presumption remains with the Defendant throughout every stage of the trial. It's not overcome unless you are convinced, beyond a reasonable doubt, that the Defendant is guilty. The State has the burden of proving the guilt of the Defendant beyond a reasonable doubt. This burden remains on the State throughout the trial.

9

thus, it does not state a cognizable claim for federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) ("it is not the province of a federal habeas corpus court to reexamine state court determinations on state law questions."); *see also Wilson v. Corcoran*, 131 U.S. 13, 16 (2011) (per curiam) (stating federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law); 28 U.S.C. § 2254(a) (authorizing a federal court to entertain a state prisoner's habeas petition "only on the ground that [s]he is in custody in violation of the Constitution or laws or treaties of the United States").

In *Estelle v. McGuire*, 502 U.S. at 71-72, the Supreme Court specifically ruled that the correctness of state pattern jury instructions does not present a federal question. A violation of state law which does not infringe upon a specific constitutional right is not cognizable on federal habeas review unless it amounts to "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Shultz argued on direct appeal that the trial court's reasonable doubt instruction constituted reversible error. (Ex. 6 at 14-15.). Declining to notice plain error by exercising its

---

> The Defendant is not required to prove his innocence; however, the State is not required to prove guilt beyond all possible doubt nor are they required to prove it to a mathematical certainty. The State is not required to negate every conceivable circumstance of innocence.

(Trial Trans. Ex. 3 at 155-56). The third paragraph of the pattern jury instructions was not read to the jury. It reads:

> A reasonable doubt is a doubt founded upon reason. It is not a fanciful doubt, a whimsical doubt or a capricious doubt. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty.

(Ex. 6 at 14-15, citing MPJI-Cr. 2:02; *see also* Ex. 7 at 4-5).

discretion[5] to overlook the failure to object to the instruction at trial, the Court of Special Appeals stated:

> Appellant challenges the court's reasonable doubt instruction. He has no quarrel with the court's instruction to the jury on the concept of reasonable doubt; he attacks instead the court's failure to define what that concept means. He points out that the instruction that was given virtually mirrors the first two paragraphs of the three paragraph instruction set forth in the Maryland Pattern Jury Instructions-Criminal (MJPI-CR"). *See* MPJI-CR 2:02. He cries foul because the instruction given did not include the third paragraph of the pattern jury instruction. [Footnote omitted]
>
> There are several reasons why we decline to excuse appellant's failure to object to the reasonable doubt instruction or to request a more complete instruction. First, the instruction that was given is not incorrect, as far as it goes.
>
> Second, absent a request (and none was made in this case), the trial court was not *required* to define reasonable doubt for the jury. *See Wills v. State*, 329 Md. 370, 382, 384 (1993) (holding that an instruction properly defining "reasonable doubt' is required *if requested*); *Lansdown v State*, 287 Md. 232, 243 (1980) (same). Consequently, we cannot say that the error complained of is, in fact, error at all, much less error that is egregious. [Emphasis in original].

(Ex. 8 at 6-7).

The Court of Special Appeals distinguished Schultz's case from those relied on in his brief. Those cases, unlike Schultz's, involved instructions that misled or confused the jury or lowered the burden of proof. *See id*. at 7. Thus, as a third reason for declining to recognize plain error, the court stated there was "nothing" to suggest that Shultz "was deprived of a fair trial. *Id*. at 8. Lastly, the court reasoned that no good explanation had been provided for defense counsel's failure to object to the instruction. (Ex. 8 at 8-9).

In light of the above, even were this claim cognizable as presented, which it is not, it does not provide grounds for habeas corpus relief under 28 U.S.C. § 2254(d). The instruction

---

[5] Maryland Rule 4-325(e) provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury….. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object." (ECF No. 8 at 5).

correctly informed the jury that Shultz was presumed to be innocent throughout every stage of the trial, the presumption was not overcome unless the State carried its burden of convincing them beyond a reasonable doubt of his guilt, and Shultz was not required to prove his innocence. (Ex 3 at 155-56; Ex 8 at 6-9).

### B.   IDENTIFICATION INSTRUCTION

Shultz's next claim is that the trial court committed error by failing to instruct the jury on eyewitness identification. (Petition, ECF No. 1 at 5).  On direct review, the Court of Special Appeals declined to review this issue for plain error, noting that "the Court of Appeals has made clear that such an instruction is committed to the exercise of the court's discretion, *even when the instruction is requested*." (citing *Gunning v. State*, 347 Md. 332, 350 (1997) (emphasis in original). (Ex. 6 and 8).  The Court of Special Appeals added that it could not discern why lack of an identification instruction constituted plain error if not requested at trial.  (Ex 8 at 10). Shultz did not request review of this decision by petitioning for a Writ of Certiorari in the Court of Appeals of Maryland. (Ex. 9).

Shultz does not identify what federal constitutional right or provision has allegedly been violated, and therefore fails to state a cognizable claim on federal habeas corpus review. *See supra* at 9-10.  Consequently, this claim will be dismissed.

Assuming arguendo the claim were cognizable, it would be dismissed as procedurally defaulted because Shultz did not raise this claim before all appropriate state courts and does not show cause and prejudice or actual innocence. *See supra* at 6-7.

### C.   CONSIDERATION OF A PRIOR CHARGE

Shultz posits the sentencing court impermissibly considered a prior charge against him which had not resulted in conviction. (Petition, ECF No. 1 at 6). On direct appeal, the Court of

Special Appeals found the claim unpreserved for appellate review and meritless. Shultz did not pursue this claim in his Petition for Writ of Certiorari (Ex. 9). Accordingly, the claim is procedurally barred and will be dismissed.

In any event, the claim provides no grounds for habeas relief. Before imposing sentence, the trial court stated:

> THE COURT: I have read the presentence investigation. I have read the recommendations, but I found most compelling—at 35, your prior involvement, first one page, then the next page, then the next page, then the next page. Found it very interesting that in your motor vehicle violations Judge Femia gave you a PBJ [probation before judgment] after all the attempted murder and the robberies. I just found that interesting. I don't think that has anything to do with it. You all obviously are able to talk him into doing that. I read your health concerns and they are there.

Defense counsel then indicated that in an unrelated case, Shultz had been acquitted of murder. The sentencing court immediately responded that was "[n]ot a fact [it] considered at all." The court acted to assure defense counsel that no charges against Shultz that resulted in acquittals were considered in imposing sentence.

> THE COURT: All right. But when you look at the total history of the involvements, the guilty findings, the nature of the guilty findings, escape, violations of probation, shotgun charges, then consider those are guilty those are the guilties. Then, considering he had just been released from prison before, just before this happened, I mean matter of days almost, I conclude that the gentleman is, in fact, a danger to the community.

(Ex. 8 at 11-14; *see also* Ex. 5 at 8-10).

Maryland's intermediate appellate court observed that an attack upon the court's sentencing considerations requires an objection at the time of sentencing, and none was raised in this case. (Ex. 8 at 13). "To the contrary, the colloquy we quoted above suggests that any concern that appellant might have had about the court's consideration of charges not resulting in convictions dissipated upon discussion of the subject with the court." *Id.* Finding no merit to the

allegation of error, the Court of Special Appeals added "[t]he [trial] court stated that it was not considering appellant's charges for which he was acquitted or those charges that were nolle prossed. The court only considered 'the total history of [appellant's] involvements, the guilty findings, the nature of the guilty findings, escape, violations of probation, . . . [that] those are the guilities." *Id*. at 14. The state court's determination is clearly substantiated by the record and provides no grounds to award habeas relief.

## II. INEFFECTIVE ASSISTANCE CLAIMS

A defendant has a constitutional right to the effective assistance of counsel. In order to establish counsel rendered ineffective assistance, it must be shown that 1) counsel's performance was deficient, and 2) the performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below "an objective standard of reasonableness." *Id*. at 688.

To satisfy the first part of this standard, a petitioner must demonstrate counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id*. at 687 (internal quotation marks and citation omitted). The standard for assessing such competence is "highly deferential" and there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' " *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 131 S.Ct. at 790 (internal quotation marks and citation omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the

two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687; *Harrington*, 131 S.Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697.

Shultz faults his trial counsel for failing to object to the trial court's reasonable doubt instruction, and failing to object to the absence of an identification instruction. (Petition, ECF No. 1 at 6). At the post-conviction hearing, trial counsel Thomas Mooney testified to having no recollection whether the last paragraph of the reasonable doubt instruction was omitted. (Ex 14 at 5). Mooney added that had he noticed the omission at the time, he would have objected. *Id*. at 5-6. On redirect examination, Mooney indicated that the verdict sheet provided for a finding of not guilty as well as guilty. *Id*. at 10.

The post-conviction court ruled '[t]hese issues were argued on appeal and the Court of Special Appeals, in a 2006 opinion, ruled on the merits. As such, these claims have been finally litigated and cannot be the subject of Post-Conviction Relief." (Ex. 15 at 8).

As discussed earlier, the Court of Special Appeals ruled the reasonable doubt instruction was not defective and there was no failure by the trial court to issue an eyewitness instruction. The Court of Special Appeals expressly noted that the absence of the instructions at issue did not prejudice Shultz because the instructions that were provided allowed the jury to properly assess the evidence. (Ex. 8 at 6-11). The record further shows that the jury was instructed correctly regarding the presumption of innocence and the State's requirement to prove Shultz's guilt beyond a reasonable doubt. (Ex. 3 at 155-56). The trial court also instructed the jury concerning its duty to evaluate direct and circumstantial evidence and assess witness testimony. *Id*. at 158-61. Most importantly, "nothing about" Shultz's case suggests he was deprived of a fair trial. (Ex. 8 at 8). Moreover, Shultz fails to allege how counsel's representation in regard to these instructions prejudiced the outcome of his case as *Strickland* requires. For these reasons, these claims do not provide grounds for habeas corpus relief. Shultz has not satisfied his burden to show ineffective assistance of counsel and these claims will be denied.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Shultz has failed to make a

substantial showing he was denied a constitutional right, and this court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Therefore, a Certificate of Appealability shall not issue.

## CONCLUSION

For the foregoing reasons, the court concludes the Petition provides no grounds for habeas corpus relief. A separate Order denying the Petition and declining to issue a Certificate of Appealability follows.

  October 3, 2014                          _____/s/_____
Date                                          DEBORAH K. CHASANOW
                                                             United States District Judge